*1343 Opinion for the court filed PER CURIAM. Concurring opinion filed by Circuit Judge PROST. Concurring opinion filed by Circuit Judge O’MALLEY, in which Circuit Judge MAYER joins.
PER CURIAM.
USPPS, Ltd. (“USPPS”) appeals the order of the United States District Court for the Western District of Texas dismissing its claim for breach of fiduciary duty and fraud. See USPPS, Ltd. v. Avery Dennison Corp., No. SA-07-CA-963-FB, 2010 WL 2802529, 2010 U.S. Dist. LEXIS 81707 (WD.Tex. June 4, 2010). We affirm.
Background
The report of the magistrate judge, which was adopted by the district court, provides a comprehensive summary of this case’s long and tortuous history, and we therefore provide only a brief synopsis of the pertinent facts. See USPPS, Ltd. v. Avery Dennison Corp., No. SA07-CA963-FB, 2010 WL 2802512, 2010 U.S. Dist. LEXIS 84450 (W.D.Tex. Mar. 18, 2010) (“Magistrate Report ”). In 1999, Joe Pat Beasley filed an application with the United States Patent and Trademark Office (“PTO”), seeking patent protection for personalized postage stamps. See U.S. Patent Application No. 09/326,712 (the “'712 application”). Beasley originally retained the Litman Law Offices, Ltd. (“Litman”) to represent him at the PTO. In March 2001, the PTO issued a notice of allowance on the '712 application.
Two months later, Beasley entered into a licensing and manufacturing agreement with Avery Dennison Corporation (“Avery”). This agreement specified that Avery would “assume responsibility for prosecution of Beasley’s patent application” and would “pay all future patent prosecution expenses in the ['712 application].” In May 2001, Beasley executed a “Revocation and Power of Attorney” which discharged Litman and appointed attorneys from Renner, Otto, Boisselle & Sklar, L.L.P. (“Renner”) to prosecute his application. Beasley informed Daryl L. Lansdale, an attorney with Fulbright & Jaworski, L.L.P. (“Fulbright”),[1] “that he sent the ['712 application] to Avery or ‘Avery Dennison’s attorneys’ to prosecute so [that] Avery would be the one paying the prosecution fees.” Magistrate Report, 2010 WL 2802512, at *12, 2010 U.S. Dist. LEXIS 84450, at *44 (footnote omitted). Lansdale responded by telling “Beasley that ‘having his own attorneys, who [were] familiar with the patents, continue to review the patents, probably was in his best interest.’ ” Id. (footnote omitted).[2]
When Neil DuChez, a Renner attorney, analyzed the prosecution file for the '712 application, he discovered that it contained relevant prior art that had not been disclosed to the PTO. Accordingly, DuChez filed a supplemental information disclosure statement disclosing this prior art and a second patent application (the “continuation application”). On July 16, 2001, the PTO issued a second notice of allowance on Beasley’s '712 application.
In July 2001, Beasley transferred ownership of the '712 application to USPPS.[3] On August 2, 2001, USPPS and Avery *1344 entered into an agreement under which: (1) Avery would market personalized postage stamps; (2) USPPS would purchase personalized postage stamps exclusively from Avery; and (3) Avery would pay USPPS a royalty equal to five percent of sales of the personalized stamps to third parties.
In April 2002, the PTO vacated its notice of allowance for the '712 application. As part of a “quality review process,” the PTO determined that the claims of the '712 application were not patentable over a prior art reference, see U.S. Patent No. 5,923,406, which the PTO had independently discovered. In May 2002, the PTO likewise rejected Beasley’s continuation application as unpatentable over the prior art.
Soon thereafter, Terry Kerr, USPPS’ president, sent email messages to A1 Green, an Avery vice-president, complaining about the “lack of follow up” on USPPS’ intellectual property matters and Avery’s failure to include USPPS in decisions related to prosecution of the patent applications. Magistrate Report, 2010 WL 2802512, at *5, 2010 U.S. Dist. LEXIS 84450, at *18-19. In the fall of 2002, the PTO issued final rejections on both the '712 and the continuation applications. In December 2002, Beasley called Avery and spoke with Julie Hauger, who worked for Avery’s president. Hauger reported that Beasley complained that Avery had “mismanaged” his patent application and had “caused him to lose his patent.” Id. at *6, 2010 U.S. Dist. LEXIS 84450, at *21 (internal quotation marks omitted). On December 17, 2002, Green sent Beasley and Kerr an email stating that he thought the chance of overcoming the PTO’s final rejections was “remote” and that he was “unable to come up with any further claim language which would overcome the [PTO’s] objections.” Id. (internal quotation marks omitted).
In January 2003, Beasley complained to Matthew Mellis, an Avery vice-president, about Avery’s handling of patent issues. According to Mellis, Beasley asserted that Avery had “mishandled” the patent applications and “had deliberately prevented him from obtaining a patent on personalized postage stamps.” Id. at *6, 2010 U.S. Dist. LEXIS 84450, at *22 (footnote and internal quotation marks omitted). On February 14, 2003, USPPS sent Avery a memorandum entitled “A Million Dollar Opportunity Damaged.” This memorandum stated that USPPS had “sustained significant monetary and other damages” as a result of Avery’s “actions and omissions.” It further stated that Avery’s “lack of action and mismanagement of our Intellectual Property has resulted in the rejection of our patent after we had twice received an approval for issuance of the patent.”
In the spring of 2003, the PTO issued notices of abandonment on both patent applications. DuChez forwarded these PTO notices to Beasley in May 2003. Avery thereafter notified USPPS that it intended to sell personalized postage stamps without further payment of royalties after the royalty agreement between Avery and Beasley expired by its own terms in August 2004. In September 2004, Beasley brought suit against Avery and Renner, alleging negligence, breach of fiduciary duty, and fraud. His complaint was dismissed, however, after the district court concluded that Beasley lacked standing to sue because he had transferred title to the patent applications to USPPS. Beasley subsequently appealed to the United States Court of Appeals for the Fifth Circuit, but his appeal was dismissed for want of prosecution. Beasley v. Avery Dennison Corp., No. 07-51311, 2008 U.S.App. LEXIS 28075 (5th Cir. Feb. 7, 2008).
*1345 On November 27, 2007, USPPS filed suit against Avery, Renner, and DuChez (collectively “the defendants”), alleging breach of fiduciary duty and fraud.[4] USPPS alleged that Avery had made representations “that Beasley as owner of the patent was the client of [Renner] with regard to the prosecution of his patent,” and failed to inform “USPPS that Avery Dennison (not Beasley or USPPS) was the client.” Magistrate Report, 2010 WL 2802512, at *2, 2010 U.S. Dist. LEXIS 84450, at *5 (internal quotation marks omitted). USPPS asserted that “it relied on the representations that Beasley was the client of Renner and DuChez when firing [Litman] and allowing Renner and DuChez to take over the patent prosecution,” when in fact “Beasley and USPPS had no legal representation in the prosecution of the patent which caused injury and damages.” Id. (footnote omitted).
On May 30, 2008, the district court issued an order dismissing USPPS’ complaint as barred by the applicable four-year statute of limitations. On appeal, however, the United States Court of Appeals for the Fifth Circuit reversed. The court noted that when reviewing a trial court’s dismissal under Federal Rule of Civil Procedure 12(b)(6), it was required to “accept all well-pleaded facts as true.” USPPS, Ltd. v. Avery Dennison Corp., 326 Fed.Appx. 842, 843 (5th Cir.2009). Applying that standard, the court determined that it could not “definitively say that the discovery rule and fraudulent concealment exceptions” to the running of the limitations period did not apply to postpone the accrual date of USPPS’ claim. Id. at 851.
On remand, a magistrate judge, at the close of limited discovery, granted the defendants’ motion for summary judgment. The magistrate judge concluded that: (1) neither the discovery rule nor the fraudulent concealment doctrine served to postpone the accrual of USPPS’ claims; and (2) there were no genuine issues of material fact on the causation element of USPPS’ claims for fraud and breach of fiduciary duty. On June 4, 2010, the district court adopted the report and recommendations of the magistrate judge.
USPPS then again appealed to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit issued an order transferring the case to this court, explaining that “the Federal Circuit has exclusive jurisdiction of an appeal where the district court’s jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338.” USPPS, Ltd. v. Avery Dennison Corp., 647 F.3d 274, 277 (5th Cir.2011) (citations and internal quotation marks omitted) (“Transfer Order ”). The court stated that “the Federal Circuit [has] held that a Texas state-law claim of attorney malpractice in a patent infringement case ‘arises under’ patent law for purposes of § 1338.” Id. at 278-79. It noted, moreover, that Davis v. Brouse McDowell, L.P.A., 596 F.3d 1355, 1359-62 (Fed.Cir.2010), held that this court has jurisdiction over state-law malpractice claims where the alleged malpractice involves “a question of patentability [even] where no patent ha[s] actually issued.” Transfer Order, 647 F.3d at 280. Because USPPS could not “prove causation without proving the patentability of its invention,” the Fifth Circuit determined that federal patent law was a necessary element of its claims. Id.; see Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (emphasizing that sec *1346 tion 1338 jurisdiction “extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims”).
The Fifth Circuit acknowledged that the decision to transfer USPPS’ state-law tort claim to this court raised an important “federalism inquiry,” Transfer Order, 647 F.3d at 278 n. 1, and that the transfer would be appropriate only if the patent issue presented in USPPS’ state-law claim rose “to the level of creating a substantial federal interest such that the Federal Circuit has exclusive appellate jurisdiction.” Id. at 278; see Grable & Sons Metal Prods., Inc. v. Dane Eng’g & Mfg., 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (emphasizing that “the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities”). The court concluded, however, that because of the “strong federal interest” in uniformity in the patent law that “exclusive federal jurisdiction was intended to ensure,” the patent issues raised in USPPS’ appeal “involvefd] a sufficiently substantial federal interest to permit federal jurisdiction over a state-law tort.” Transfer Order, 647 F.3d at 282.
DISCUSSION
I. Jurisdiction
In Davis, an inventor sued her attorney, asserting that he had “committed malpractice by performing various acts of negligence in connection with the preparation and filing of’ her U.S. patent applications and that this negligence “cost her the opportunity to secure patents on her inventions.” 596 F.3d at 1360, 1361. We concluded that the district court had properly exercised section 1338 jurisdiction over Davis’ state-law malpractice claim because unless she could show that her inventions were patentable, her attorney’s “negligence could not have caused her to suffer any damages.” Id. at 1361; see 28 U.S.C. § 1338 (providing that federal district courts “shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents”). In short, because demonstrating that her inventions were patentable was “a necessary element of one of [her] legal malpractice claims,” Davis, 596 F.3d at 1362, Davis’ “right to relief necessarily depended] on resolution of a substantial question of federal patent law,” id. at 1359 (citations and internal quotation marks omitted).
A similar analysis applies here. USPPS alleges that the defendants’ malfeasance caused it to be denied a patent on personalized postage stamps. Unless USPPS can demonstrate that its invention was patentable over the prior art, however, it cannot establish that the defendants’ actions “caused [it] to suffer any damages.” Id. at 1361. Accordingly, applying Davis, the Fifth Circuit concluded that the exercise of section 1338 jurisdiction was appropriate.
Davis arguably raises important questions related to the “congressionally approved balance of federal and state judicial responsibilities,” Grable, 545 U.S. at 314, 125 S.Ct. 2363, but we are bound by that decision unless it is overruled by an en banc court. See Tex. Am. Oil Corp. v. U.S. Dep’t of Energy, 44 F.3d 1557, 1561 (Fed.Cir.1995) (en banc) (“This court applies the rule that earlier decisions prevail unless overruled by the court en banc, or *1347 by other controlling authority such as intervening statutory change or Supreme Court decision.”). Moreover, USPPS had already brought two appeals before the United States Court of Appeals for the Fifth Circuit before its case was transferred here. For this court to refuse to adjudicate the merits of USPPS’ appeal at this stage of the proceedings would subject the parties to precisely the sort of “jurisdictional ping-pong” the Supreme Court has cautioned against. Christianson, 486 U.S. at 818, 108 S.Ct. 2166. As the Court made clear, “[ujnder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.” Id. at 819, 108 S.Ct. 2166.
II. Timeliness
We conclude that the district court correctly determined that USPPS’ complaint was untimely.[5] Under Texas law, a plaintiff must bring a cause of action for fraud or breach of fiduciary duty no later than four years after the date it first accrues. Tex. Civ. Prac. & Rem.Code § 16.004(a). “In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.” Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 221 (Tex.2003). Here, the alleged legal injury suffered by USPPS occurred no later than May 2003, when the PTO issued final notices of abandonment on both of USPPS’ patent applications. USPPS did not file suit, however, until November 27, 2007, more than four years after this injury occurred.
Texas law provides two exceptions to the rule that the statute of limitations begins to run when a legal injury occurs. First, under the “discovery rule” a cause of “action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.” S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996). Second, under the “fraudulent concealment” doctrine the accrual of a claim “is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.” Id. at 6.
A. The Discovery Rule
The discovery rule provides a “very limited exception” to the running of the limitations period. Computer Assocs. Int’l v. Altai Inc., 918 S.W.2d 453, 455 (Tex. 1996). It serves to defer the accrual of a claim when “the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified.” S.V., 933 S.W.2d at 6. An injury will be deemed “inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.” Id. at 7; see Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc., 157 F.3d 1032, 1034 (5th Cir.1998).
As the district court correctly concluded, the discovery rule is not available to defer the accrual of USPPS’ claim. By May 2003, at the latest, USPPS knew that it had lost the right to obtain a patent on personalized postage stamps and had concluded that this loss was due to wrongdoing on the part of the defendants. Soon after the PTO rejected USPPS’ applica *1348 tions as unpatentable over the prior art, USPPS wrote to Avery to complain of Avery’s “lack of follow-up” regarding USPPS’ intellectual property. Magistrate Report, 2010 WL 2802512, at *5, 2010 U.S. Dist. LEXIS 84450, at *18 (internal quotation marks omitted). In December 2002, Beasley called Hauger, who worked for Avery’s president, complaining that Avery had “mismanaged” his application and had caused him to “lose his patent” for personalized postage stamps. Id. at *6, 2010 U.S. Dist. LEXIS 84450, at *21 (internal quotation marks omitted). Two months later, USPPS sent Avery a memorandum captioned “A Million Dollar Opportunity Damaged.” This memorandum stated that Avery’s “lack of action and mismanagement of [USPPS’] Intellectual Property has resulted in the rejection of our patent after we had twice received an approval for issuance of the patent.” Id. at *7, 2010 U.S. Dist. LEXIS 84450, at *25 (internal quotation marks omitted). Thus, by May 2003, when the PTO issued final notices of abandonment on both of USPPS’ applications, USPPS had not only concluded that it had lost a “million dollar opportunity” when it forfeited its patent rights, but also believed that this loss was the result of “mismanagement” and “lack of follow-up” on Avery’s part. Because USPPS knew, or should have known, by May 2003 that it had suffered an actionable injury as a result of the defendants’ alleged wrongdoing, the discovery rule does not serve to defer the accrual of its claim. See Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 202 (Tex.2011) (“Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy.”).
USPPS argues that although it might have determined, by May of 2003, that Avery and Renner acted negligently in prosecuting the '712 application, it was not until 2004 that it discovered that the defendants acted fraudulently and in breach of their fiduciary obligations. As the Texas Supreme Court has said, however, “the discovery rule does not linger until a claimant learns of [the] actual causes” of his injury. PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd., 146 S.W.3d 79, 93 (Tex.2004). USPPS knew by May 2003 not only that it had suffered an injury— the loss of its patent rights—but also had come to the conclusion that this loss was due to misconduct on the part of the defendants. Regardless of whether USPPS believed that the defendants had acted negligently, or with fraudulent intent, USPPS’ cause of action accrued when it learned that it had suffered an actionable injury. Id. (emphasizing that a claim accrues regardless of whether a party knows the “specific cause” of his injury); Bayou Bend Towers Council v. Manhattan Constr. Co., 866 S.W.2d 740, 743 (Tex.App.1993) (explaining that “all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible”). Under Texas law, when a party learns that he has suffered a loss as a result of “the wrongful conduct of another,” he has a duty to investigate the cause of that loss and to file suit in a timely manner. KPMG Peat Marwick, L.L.P. v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 749 (Tex.1999).
B. The Fraudulent Concealment Doctrine
USPPS argues that it “had no patent attorney or legal representation in the prosecution of its patent,” and that “[t]his lack of legal representation resulted in the loss of the patent.” It contends, moreover, that the fraudulent concealment doctrine serves to toll the statute of limita *1349 tions because, due to Avery’s alleged misrepresentations and fraud, USPPS did not learn until 2004 that Renner was working for Avery and not for USPPS. This reasoning is not persuasive. The equitable doctrine of fraudulent concealment tolls the statute of limitations in situations in which “a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs.... ” Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex.1983); see also Seatrax, Inc. v. Sonbeck Int’l, Inc., 200 F.3d 358, 366 (5th Cir.2000). This doctrine, however, “only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence.” BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 67 (Tex.2011). Here, USPPS knew, or should have known, by at least May 2003, that Renner was working as Avery’s attorney in prosecuting the '712 application. Pursuant to the 2001 agreement between Beasley and Avery, Avery agreed to “assume responsibility” for prosecution of the '712 application. Magistrate Report, 2010 WL 2802512, at *12, 2010 U.S. Dist. LEXIS 84450, at *44. Beasley then informed Lansdale, an attorney from a law firm that represented USPPS until February 2003, “that he sent the [’712 application] to Avery or ‘Avery Dennison’s attorneys’ to prosecute so [that] Avery would be the one paying the prosecution fees.” Id. (footnote omitted). Lansdale responded by telling “Beasley that having his own attorneys, who [are] familiar with the patents [and] continue to review the patents, probably was in his best interest.” Id. (footnote and internal quotation marks omitted).
USPPS’ argument that it was unaware that Renner worked for Avery and not for USPPS is undermined by the fact that USPPS never signed a retainer agreement with Renner and never paid legal fees to Renner for its work in prosecuting the '712 application. Instead, Renner sent monthly bills to Avery for its work prosecuting the '712 application and Avery paid Renner. As early as May 2002, USPPS was complaining to Avery that Avery had “restricted” communications between USPPS and DuChez, the Renner attorney prosecuting the '712 application. Id. at *12, 2010 U.S. Dist. LEXIS 84450, at *46. USPPS asserted that Avery had prevented DuChez “from communicating with [USPPS] on the same time frame” that he communicated with Avery. Id. (internal quotation marks omitted). Given that Avery was paying Renner’s fees and had acted to restrict communications between Renner and USPPS, USPPS knew, or in the exercise of due diligence should have known, that Renner was acting as legal counsel to Avery in the prosecution of the '712 application.
A “plaintiff must, of course, exercise reasonable diligence to discover what has been hidden from him by the defendant and the period of tolling may not extend beyond the time the plaintiff actually acquired knowledge of the facts or should have acquired such knowledge by the exercise of reasonable diligence.” Leonard v. Eskew, 731 S.W.2d 124, 128 (Tex.App.1987). Even assuming arguendo that the defendants failed to disclose the fact that Renner was working for Avery, the statute of limitations was tolled only until such time as USPPS, in the exercise of reasonable diligence, should have discovered that fact.
Conclusion
Accordingly, the order of the United States District Court for the Western District of Texas is affirmed.
AFFIRMED

. Fulbright represented USPPS until February 2003.

. Beasley asserted that he had “no recollection of ever being advised by [Lansdale] to retain separate counsel to represent [him] in the prosecution of the patents,” but he does not deny that this conversation occurred. App’x Exhibit G; see Magistrate Report, 2010 WL 2802512, at *14-15, 2010 U.S. Dist. LEXIS 84450, at *52-53.

. Beasley serves as chairman of USPPS.

. USPPS subsequently amended its complaint, adding new "collusive action claims,” including conspiracy and aiding and abetting fraud and breach of fiduciary duty. Magistrate Report, 2010 WL 2802512, at *2, 2010 U.S. Dist. LEXIS 84450, at *6.

. On appeal, USPPS contends that the district court erred when it concluded that USPPS failed to present evidence sufficient to raise genuine issues of material fact on the causation element of its breach of fiduciary duty and fraud claims. We need not reach this issue, however, because we conclude that USPPS' suit is time-barred.