**Opinion issued July 26, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00341-CV

————————————

## IN RE HAYNES AND BOONE, LLP AND
## PATRICK L. HUGHES, Relators

———————————————————————————————

### Original Proceeding on Petition for Writ of Mandamus

———————————————————————————————

### CONCURRING OPINION

I join in the Court's opinion holding that federal courts do not have exclusive jurisdiction over this case. The Court holds, and I agree, that regardless of whether federal courts have jurisdiction over cases like this one, relators have not established that such jurisdiction would be exclusive of, rather than concurrent with, state courts' jurisdiction. I write separately only to address another approach to the issue. Specifically, like the federal district court that considered this issue

before us,[1] I would hold that, under the existing record, relators have not established two prerequisites to the existence of federal jurisdiction over this case: (1) the existence of a "substantial" federal question and (2) harmony with the careful balance between federal and state courts. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (setting forth four-part test for embedded-federal-question jurisdiction). Because federal courts do not have jurisdiction over this case, they necessarily do not have exclusive jurisdiction.

## Embedded-Federal-Question Jurisdiction

The jurisdictional provisions of the United States Code grant federal district courts original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." This is often referred to as "federal question jurisdiction" or "arising under jurisdiction." 28 U.S.C. § 1331. An action "aris[es] under" federal law when (1) federal law creates the cause of action or (2) in some rare cases, when a cause of action created by state law nevertheless turns on a substantial question of federal law. *See Grable*, 545 U.S. at 312, 125 S. Ct. at 2366–67 (noting that federal-question jurisdiction over state-law claim is less common); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006) (describing category of cases as "special and small" and "slim"); Lonny S. Hoffman, *Intersections of State and Federal Power: State Judges,*

---

[1]     *RX.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 795–97 (S.D. Tex. 2011).

*Federal Law, and the "Reliance Principle"*, 81 Tul. L. Rev. 283, 298 (2006) ("routine efforts to come within this statutory head of jurisdiction should be rejected in favor of allowing the state court to apply and interpret the applicable federal law"). The second type of federal-question jurisdiction is often referred to as embedded-federal-question jurisdiction.

The questions in this legal malpractice suit—arising out of relators' prosecution of a Sherman Act claim in federal court—are whether federal question jurisdiction exists over this state-law action and, if so, whether that jurisdiction is exclusive. Under this record, I answer the first question in the negative, and therefore do not need to reach the second question (although I join in the Court's answer to that question). Answering the first question requires a four-part inquiry: (1) do real-party plaintiffs' legal malpractice claims require resolution of an issue of antitrust law under the Sherman Act; if so, is that antitrust issue (2) actually disputed and (3) substantial; and (4) will federal jurisdiction disturb the balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 312–14, 125 S. Ct. at 2366–68; *see also Minton v. Gunn*, 355 S.W.3d 634, 640 (Tex. 2011), *petition for cert. filed*, No. 11-1118 (U.S. March 9, 2012). Requiring an affirmative answer to each of these four inquiries is necessary to ensure that reference to an embedded federal issue is not "a password for opening federal courts" to any state malpractice action "embracing a point of federal law." *Grable*, 545 U.S. at 314.

Relators' plea to the jurisdiction fails to satisfy two of these elements. First, the record before us does not establish the existence of a "substantial" federal question. Second, relators have not demonstrated that affording federal courts jurisdiction over malpractice actions like this one would not upset the careful balance between federal and state courts.

## A.     The record does not show a substantial, disputed federal issue

Relators' petition in this Court is premised primarily on their broad interpretation of *Minton* and its application of the standards articulated in *Grable*. Relators contend that, under *Minton*, they have shown the presence of an "actually disputed" and "substantial" federal issue (the second and third factors under *Grable*) merely by asserting that they are contesting whether the real-party plaintiffs could have prevailed on their underlying Sherman Act claim. They characterize this fact as being "absolutely dispositive." But that conclusion is not compelled by *Minton* for several reasons. First, while *Minton* involved a meaningful legal and factual dispute over intersecting patent law doctrines, relators have not demonstrated that the federal issues here require anything more than the application of established federal law to factually-disputed claims. Second, the *Minton* court expressly limited its holding to the facts of that case, and the circumstances favoring federal jurisdiction in *Minton* are not present here.

4

**1.** ***Minton* turned on a substantial, legally and factually disputed issue of federal patent law**

In *Minton*, the Texas Supreme Court held that federal courts had exclusive jurisdiction over a legal malpractice lawsuit arising out of the defendants' handling of a patent claim. *Minton*, 355 S.W.3d at 640–47. Relators construe *Minton* as a sea-change in the doctrine of embedded-federal-question jurisdiction, essentially eliminating *Grable*'s "actually disputed" and "substantial" federal issue requirements when the federal issue arises from an area of federal law in which Congress has created claims that may originate only in federal courts. But the *Minton* Court did not presume a "substantial" federal question merely because the malpractice action before the Court would require the application of federal patent law; instead, the Court determined that the federal issue in that case was, in fact, substantial and actually disputed.

The federal issue in *Minton* was whether the "experimental use" exception would have excused Minton's patent claim from the statutory on-sale bar against patents filed more than one year after the patented invention is sold. *Id.* at 638. The application of patent law's "experimental use" doctrine was dispositive of Minton's malpractice action: Minton's sole assertion of negligence was premised on his attorneys' failure to timely plead and brief the experimental use exception in the federal patent litigation. *Id.* at 642. The Court recognized the "strong interest in having federal patent law applied uniformly." *Id.* at 645; *see also* 28 U.S.C.

5

§ 1295(a) (vesting federal circuit with exclusive jurisdiction over patent appeals). Despite all of this—a state-law claim that depended entirely on the interaction between a federal statute and a federal-common-law exception to that statute in an area of law in which the courts have recognized a strong interest in uniform federal interpretation and application—the *Minton* Court expressly noted that whether the federal issue was sufficiently substantial to justify exclusive federal jurisdiction was a "close" call. *Id*. at 643. If *Minton* was a close call, this is an easy one.

2. **Relators have not shown a substantial federal issue that is both legally and factually disputed**

*Minton* instructs that in order for a disputed federal issue to be substantial there must be more than factual disputes regarding the application of the federal laws to the case—there must also be a legal dispute.[2] *Id*. at 644 (stating that

---

[2] In *Minton*, there was a factual dispute regarding the applicability of the experimental use exception to the on-sale bar to patentability of the invention. The court of appeals' opinion reveals that there was also, however, a legal dispute. *Minton v. Gunn*, 301 S.W.3d 702, 709 (Tex. App.—Fort Worth 2010), *rev'd on other grounds*, 355 S.W.3d 634 (Tex. 2011) (noting that dispute was "predominately one of fact"). In the court of appeals, the parties disagreed on the standard that applies for determining when testing is sufficient to constitute an experimental use. The plaintiff contended that "experimental use is supported by any testing needed to convince the inventor that the invention is capable of performing its intended purpose in its intended environment." *Id.* at 712 n. 46. The court of appeals disagreed and held that the testing must relate to a claimed feature of the patented invention. Applying this standard, the court of appeals concluded that the testing evidence offered by the inventor did "not, as a matter of law, support experimental use." *Id.* at 712. Because the court of appeals affirmed a no-evidence summary judgment on this basis, the disputed legal issue was critical to the ultimate issue in the case. In contrast, in this case, there is no evidence of a significant, disputed legal issue in the plea to the jurisdiction.

6

plaintiff was required to prove that federal issue was "legally and factually viable"); *see also id*. at 642–43 ("the legal and factual viability" of federal issue was "clearly in dispute"). It is the construction of the law—not its application, which is often left to the jury—in which the expertise of federal judges is particularly helpful and uniformity is needed. A dispute over the application of the law to the facts of the case is insufficient to open the doors to the federal courthouse. *See Grable*, 545 U.S. at 315 ("meaning of the federal [law]" must be actually in dispute); *id*. at 316 (observing that the Court in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229 (1986), "assumed that federal law would have to be applied to resolve the claim" but nevertheless determined that federal jurisdiction was unavailable). The *Grable* Court rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. Instead, it twice stated that the issue is whether there is a dispute "respecting the validity, construction or effect of [federal] law." *Id*. (quoting *Shulthis v. McDougal,* 225 U.S. 561, 569 (1912).

Relators rely on certain defenses asserted by the antitrust defendants in the underlying Sherman Act lawsuit as establishing a substantial federal issue.[3] Even if

---

[3] To the extent relators rely on expert reports they provided this Court after oral argument, we may not consider evidence not before the trial court at the time of the plea to the jurisdiction hearing. *See In re Taylor*, 113 S.W.3d 385, 392 (Tex.

we were to look at its defenses in the original lawsuit,[4] relators have not demonstrated on this record that those defenses implicate a legal dispute involving the validity or construction of federal antitrust law, as opposed to the mere application of such law to the facts of this case. The mere fact that the "case within the case" is based on Sherman Act claims supports a fair inference that federal issues may arise in the course of the litigation. These may include the issues identified in relators' plea to the jurisdiction and may include disputes that are primarily legal in nature or disputes that are more fact-oriented. But at this point we can only speculate; the record does not establish that these defenses would require anything other than a "fact-bound and situation-specific" analysis under generic principles of antitrust litigation. *See Empire Healthchoice*, 547 U.S. at 701,

App.—Houston [1st Dist.] 2003, orig. proceeding) (stating that, in mandamus proceedings, we "focus on the record that was before the trial court" and exclude from our consideration filings "that were not part of the trial court record at the time of the hearing on the motion that is the subject of the original proceeding."). Even if I were to consider these reports, it is still not clear to me that there is a substantial federal question; relators' motion for summary judgment (which real-party plaintiffs filed after oral argument and was also filed after the ruling on the plea to the jurisdiction) is not based on any arguments under the Sherman Act.

[4] Real-party plaintiffs contend that we cannot consider this evidence under the well-pleaded complaint rule, a federal standard that limits subject-matter-jurisdiction inquiries to the face of the plaintiff's complaint. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2847 (1983) ("the *plaintiff*'s complaint establishes that the case 'arises under' federal law"). Arguably, the inquiry here could be governed by the Texas procedure that permits challenges to the existence of jurisdictional facts in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Because the documents on which relators rely do not demonstrate a substantial, disputed federal issue, I need not decide this issue.

126 S. Ct. at 2137 (stating that "fact-bound and situation-specific" federal questions are insufficient to create arising-under jurisdiction); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) ("What the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.").

### 3.  *Minton* is an expressly limited holding

Although this case, like *Minton*, is a malpractice action arising out of the prosecution of a federal cause of action, that fact does not, alone, establish a substantial federal issue. The Supreme Court rejected that kind of sweeping displacement of state-law claims in *Grable*. *See Grable*, 545 U.S. at 314, 125 S. Ct. at 2368 (rejecting "single, precise, all-embracing" test for determining embedded federal jurisdiction) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 821, 108 S. Ct. 2166, 2180 (1988) (Stevens, J., concurring); *id.* at 317–18, 125 S. Ct. at 2370 (describing *Merrell Dow* as disclaiming "any bright-line rule" and explaining that "questions of jurisdiction over state-law claims require 'careful judgments'" and a "contextual enquiry"); *Merrell Dow*, 478 U.S. at 808, 106 S. Ct. at 3232 (rejecting use of a "single, precise definition" to determine arising-under jurisdiction). Consistently, the *Minton* Court expressly limited the scope of its holding, stating that it would not "cause all legal malpractice suits

9

arising out of patent litigation to fall under the exclusive patent law jurisdiction of the federal courts," and cautioning that the opinion "should only be construed as conferring exclusive federal patent jurisdiction based upon the specific facts of this case." *Minton*, 355 S.W.3d at 646. Furthermore, the Court noted that "any state litigant asserting a legal malpractice action to recover for damages resulting from his patent attorney's negligence in patent prosecution or litigation must also satisfy all four elements of the *Grable* test to place his claim under exclusive federal jurisdiction," and that "[i]n the context of state-based legal malpractice claims, plaintiffs will not always be able to meet such a burden." *Id.*

In addition to the absence from the record of a substantial *legal* dispute over federal law, several other key facts favorable to federal jurisdiction in *Minton* are not present here. First, antitrust law does not present the same heightened need for uniformity and predictability presented by questions of patent validity. *See, e.g.*, *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 284 (5th Cir. 2011) (observing that special federal interest exists in developing uniform body of patent law, and that interest is protected by "Congress's grant of exclusive appellate jurisdiction over patent cases to [federal circuit] court."); *see also USPPS, Ltd. v. Avery Dennison Corp.*, 676 F.3d 1341, 1350 (Fed. Cir. 2012) (Prost, J., concurring) (contending that Federal Circuit's approach to legal malpractice cases comports

with *Grable* because "substantive patent law issues" implicated in such cases are necessarily substantial).

Second, patent law's "experimental use" exception to the on-sale bar was the fulcrum of the *Minton* action—the failure to properly plead and brief the "experimental use" doctrine was the sole act of negligence Minton pleaded, and Minton alleged that failure, alone, caused him to lose his patent claim—and that issue was brought to a head in the trial court through summary judgment proceedings. *Minton*, 355 S.W.3d at 642. Here, the negligent conduct pleaded is failure to file the underlying litigation timely; the Sherman Act defenses relators identify (which were pleaded by the defendants in the underlying action) are, under this record, only some of the issues that may be relevant to proving the causation element of real-party plaintiffs' malpractice claim. *Cf. id.* at 646–47 (favorably citing *Roof Tech. Servs., Inc. v. Hill*, 679 F.Supp.2d 749, 754 (N.D. Tex. 2010) (explaining that state legal malpractice action involving attorney's "failure to meet deadlines and communicate with [his] client" and in which "[p]atent issues are merely floating on the periphery" did not trigger exclusive federal patent jurisdiction), and *Genelink Biosciences, Inc. v. Colby*, 722 F. Supp. 2d 592, 601 (D.N.J. 2010) (holding that where state malpractice claim was based on missed deadlines, and not on the validity of the actual patent itself, there was no patent issue triggering exclusive federal patent law jurisdiction)).

11

**4. Conclusion on the "substantial federal issue" element**

A substantial contested federal issue is one that involves "a serious federal interest in claiming the advantages thought to be inherent in a federal forum" and "an important issue of federal law" that is "both dispositive of the case and . . . controlling in numerous other cases." *Grable*, 545 U.S. at 313, 315, 125 S. Ct. 2367–68; *Empire Healthcare*, 547 U.S. at 700, 126 S. Ct. at 2137. It is also central to the parties' dispute. *See Grable*, 545 U.S. at 312, 320, 125 S. Ct. at 2367, 2371 (disputed federal issue was "at the heart of the state-law title claim"); *Empire Healthchoice*, 547 U.S. at 699 n.5, 126 S. Ct. at 2136 (describing the classic federal-question jurisdiction claim as one "predicated on the centrality of a federal issue"); *see also Minton*, 355 S.W.3d at 645; Hoffman, 81 TUL. L. REV. at 300 (stating that disputed federal issue "may not be some minor point of federal law, but instead vital, relevant, and significant . . . to a wide range of persons and behavior" and "an issue is of widespread import").[5] Thus, relators' burden to show

---

[5]    This requirement, known as the centrality requirement,

> addresses whether the plaintiff's claim is "federal enough" to justify invocation of federal question jurisdiction. Centrality asks how much—an assessment ill-suited to a cut-and-dried rule. It calls for a standard that . . . tends to collapse decisionmaking back into the direct application of the background principle or policy to a fact situation. Standards allow for the decrease of errors of under- and over-inclusiveness by giving the decisionmaker more discretion than do rules. Standards allow the decisionmaker to take into account all relevant factors or the totality of the

a substantial issue is not a light one. They must demonstrate both the issue's importance in the suit itself and in the greater scheme of the development of the law. Relators have failed to carry this burden to show a clear abuse of the trial court's discretion warranting mandamus relief.

**B.      Relators have not shown that recognizing federal jurisdiction here would not disrupt the careful balance between federal and state courts**

Relators likewise fail to satisfy the fourth, and arguably most important, prong of the *Grable* test. *See Grable*, 545 U.S. at 310, 125 S. Ct. at 2365 (stating that "the national interest in providing a federal forum" for the federal issue involved in case was "sufficiently substantial to support the exercise of federal-question jurisdiction" without distorting the "division of labor between state and federal courts"); *see also Minton*, 355 S.W.3d at 644. Specifically, relators ask this Court to hold that an action traditionally pursued in state court now belongs (exclusively) in federal court, despite a federal district court's determination that it lacked any (much less exclusive) jurisdiction over the case. But they have not demonstrated that such a holding would not disturb the balance of judicial

---

circumstances. We should not be surprised or disappointed, then, if the centrality inquiry does not always yield litmus-like answers. The nature of the inquiry requires nuance and balancing.

Richard D. Freer, *Of Rules and Standards: Reconciling Statutory Limitations on "Arising Under" Jurisdiction*, 82 IND. L.J. 309, 320 (2007).

13

responsibility Congress has struck between federal and state courts under the procedural posture of this case.

Federal courts have limited jurisdiction. And federal courts have expressed concern that the doors to their courts should not be opened too wide for claims that are traditionally handled by state courts—like legal malpractice claims—under the doctrine of embedded-federal-question jurisdiction. *See Grable*, 545 U.S. at 319, 125 S. Ct. at 2371 (finding jurisdiction only after determining that recognizing federal-question jurisdiction over actions like that before Court "would not materially affect, or threaten to affect, the normal currents of litigation" by introducing flood of state claims into federal courts). Here a federal court has already rejected relators' contention that federal courts have jurisdiction over this case. Congress elected to make a federal court's determination that a case should be remanded generally non-reviewable. 28 U.S.C. § 1447(d); *Schexnayder v. Entergy La., Inc.*, 394 F.3d 280, 283 (5th Cir. 2004). To allow a state court to second-guess a federal court that has already remanded a case because it determined that it lacked jurisdiction would be contrary to Congress's intent in limiting review of remand determinations. If a federal court decides to close its doors to a claim, a state court should not force the federal courthouse door open.

"[T]here must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368. Here

14

that assessment counsels against a state-court declaration that, contrary to the prior decision of a federal court upon removal, federal courts—and federal courts alone—bear the burden of providing a remedy for a state-law cause of action merely because federal law may be applied to an element of the claim.

**Conclusion**

Courts should attempt to avoid "upsetting the state-federal line drawn (or at least assumed) by Congress." *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368. Legal malpractice claims are on the side of the line that is "ordinarily resolved in state courts." *Empire Healthchoice*, 547 U.S. at 683, 126 S. Ct. at 2127. Therefore, in deciding whether 28 U.S.C. § 1331 grants federal courts arising-under jurisdiction, courts "should await a clear signal from Congress" that it intends to displace state courts of this task. *Id*. Because no such signal exists here, I would conclude that the trial court did not abuse its discretion in denying the plea to the jurisdiction on the record before it.

I therefore concur in the Court's opinion.

Harvey Brown
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Justice Brown, concurring.

15