# United States Court of Appeals for the Federal Circuit

2009-1395


HEATHER A. DAVIS,

Plaintiff-Appellant,

v.

BROUSE MCDOWELL, L.P.A.
and DANIEL A. THOMSON,

Defendants-Appellees.


Steven D. Bell, Steven D. Bell Co., L.P.A., of Brecksville, Ohio, argued for plaintiff-appellant. Of counsel on the brief were Jeffrey R. Sadlowski, Jeffrey R. Sadlowski, LLC, of Brecksville, Ohio, and Himanshu S. Amin, Himanashu S. Amin, LLC, of Cleveland, Ohio.

James A. King, Porter, Wright, Morris & Arthur LLP, of Columbus, Ohio, argued for defendants-appellees. With him on the brief was Bryan R. Faller.

Appealed from: United States District Court for the Northern District of Ohio

Judge Sara Lioi

# United States Court of Appeals for the Federal Circuit

2009-1395

HEATHER A. DAVIS,

Plaintiff-Appellant,

v.

BROUSE MCDOWELL, L.P.A.
and DANIEL A. THOMSON,

Defendants-Appellees.

Appeal from the United States District Court for the Northern District of Ohio in case no. 5:08-CV-1356, Judge Sara Lioi.

_____

DECIDED: March 2, 2010

_____

Before NEWMAN, BRYSON, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Heather A. Davis appeals from a decision of the United States District Court for the Northern District of Ohio granting summary judgment in favor of Daniel A. Thomson and Brouse McDowell, L.P.A. (collectively, Defendants). Because the district court correctly determined that Ms. Davis failed to introduce evidence sufficient to establish a genuine issue of material fact as to an essential element of her case, we affirm.

## I. BACKGROUND

Ms. Davis is a solo inventor who developed the website, search engine, and business known as The IP-Exchange. Ms. Davis describes The IP-Exchange as a social networking platform targeted at "intellectual property professionals and non-

professionals alike." In 2003, Ms. Davis contacted Mr. Thomson, an attorney who was then employed by the Ohio-based law firm Brouse McDowell, L.P.A. Ms. Davis requested general information about patent protection and told Mr. Thomson that she was particularly interested in obtaining international patent coverage.

Mr. Thomson responded by sending Ms. Davis a letter explaining various aspects of the Patent Cooperation Treaty (PCT), which provides a unified procedure for filing a single patent application in multiple countries. Mr. Thomson's letter discussed the advantages of filing patent applications under the PCT and the deadlines and costs associated with PCT applications. The letter did not mention the "absolute novelty" rule that applies in certain countries to bar an inventor from obtaining a patent if she has publicly disclosed her invention prior to filing an application. Ms. Davis went live with her IP-Exchange website in 2005.

On January 20, 2006, Ms. Davis filed two provisional patent applications with the United States Patent and Trademark Office (PTO). These provisional applications related to The IP-Exchange website and search engine, respectively. Under 35 U.S.C. § 119(e), Ms. Davis was required to file a U.S. non-provisional (or utility) patent application within one year of filing the corresponding provisional application if she wanted to retain the January 20, 2006 priority date. Similarly, Ms. Davis had one year from the filing date of the provisional application to file any PCT applications. See Paris Convention for the Protection of Industrial Property art. 4(A), March 20, 1883, 21 U.S.T. 1583. This one-year limit set the filing deadline for Ms. Davis's utility and PCT applications as Monday, January 22, 2007.

On Wednesday, January 17, 2007—five days before the filing deadline for the utility and PCT applications—Ms. Davis again contacted Mr. Thomson. She told him about the provisional applications relating to The IP-Exchange and the upcoming deadline for filing corresponding utility applications, and she asked if he could prepare and file U.S. utility and PCT applications on or before the following Monday, January 22. Mr. Thomson agreed to prepare and file the applications by the deadline. However, he told Ms. Davis that he was leaving the following day for vacation and would not return until Monday. He asked Ms. Davis to provide him with all necessary files before he left.

On Thursday, January 18, Ms. Davis sent Mr. Thomson an email with an attachment containing fourteen pages of single-spaced claims that she believed could be used for her inventions. Ms. Davis told Mr. Thomson's assistant that she had an additional 275 pages of material relating to the inventions that she wanted to provide to Mr. Thomson. Due to technical difficulties, however, Ms. Davis was unable to provide Mr. Thomson's assistant with these materials until the day after he left.

Mr. Thomson returned from his vacation as scheduled, on Monday, January 22. Defendants concede that no other Brouse McDowell attorney worked on Ms. Davis's applications during his absence. Mr. Thomson copied content from Ms. Davis's provisional applications to create three corresponding U.S. utility patent applications and filed the utility applications by the end of the day. Due to the looming deadline, Mr. Thomson planned to get the applications on file and "go back and clean [them] up" later. J.A. 1394 (Thomson Dep. 119:23-24, July 1, 2008). He did not file any PCT applications on January 22. Ms. Davis alleges that the U.S. applications prepared and

filed by Mr. Thomson were deficient in various respects and that these deficiencies ultimately precluded her from securing patents on her inventions.

That evening, Ms. Davis contacted Mr. Thomson via telephone and email to verify the status of the PCT applications. Mr. Thomson responded, in an email sent at 10:47 p.m., that he had not filed any PCT applications. He explained that "I do not think it is worth spending the money, since you will not be able to obtain patent protection in Europe." J.A. 1347. After further discussion with Ms. Davis the next day, Mr. Thomson agreed to prepare the requested PCT applications. He filed the PCT applications on January 25, 2007.

The relationship between Ms. Davis and Mr. Thomson continued to deteriorate, and in June 2007 Mr. Thomson withdrew his representation of Ms. Davis before the PTO. Ultimately, Ms. Davis's patent applications went abandoned. Ms. Davis asserts that because her inventions lacked patent protection her investors withdrew their funding, leaving her unable to operate The IP-Exchange as a business.

In January 2008, Ms. Davis sued Defendants in the Court of Common Pleas for Summit County, Ohio. The originally filed complaint alleged that Defendants committed malpractice by failing to timely file three PCT applications on Ms. Davis's inventions. Ms. Davis amended her complaint in May 2008 to allege that Defendants committed malpractice by failing to file the three PCT applications as well as by "other omissions."

In June 2008, Defendants removed the action to federal court. Defendants explained in their Notice of Removal that Ms. Davis had testified at deposition that the "other omissions" recited by the complaint included Mr. Thomson's alleged negligence in preparing and filing the U.S. applications. Defendants asserted that adjudicating Ms.

Davis's malpractice claims would necessarily involve a resolution of the patentability of her inventions. Therefore, according to Defendants, Ms. Davis's claims raised a substantial question of federal patent law over which the district court had exclusive jurisdiction pursuant to 28 U.S.C. § 1338(a).

The parties engaged in discovery, exchanged expert reports, and deposed each others' experts. Defendants then filed a motion for summary judgment seeking dismissal of Ms. Davis's claims, and Ms. Davis filed a motion for partial summary judgment on Defendants' affirmative defenses. The court granted Defendants' motion in its entirety, dismissed Ms. Davis's motion as moot, and entered judgment in favor of Defendants. Ms. Davis appeals.

## II. DISCUSSION

### A.

We must first determine whether we have jurisdiction over this appeal. Pursuant to 28 U.S.C. § 1295(a)(1), we have exclusive jurisdiction over an appeal from a final district court decision if the court's jurisdiction was based at least in part on 28 U.S.C. § 1338. Section 1338(a) provides that federal district courts have exclusive jurisdiction over actions "arising under any Act of Congress relating to patents." Here, the district court determined that it had jurisdiction over Ms. Davis's malpractice claim pursuant to 28 U.S.C. § 1338(a). We review the court's jurisdictional determination without deference. Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1267 (Fed. Cir. 2007).

The Supreme Court set forth the test for determining whether a district court has jurisdiction pursuant to 28 U.S.C. § 1338(a) in Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988): jurisdiction extends to those cases "in which a well-pleaded

complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Id. at 808-09. If the well-pleaded complaint presents multiple theories supporting a claim, that claim "may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." Id. at 810.

Ms. Davis's cause of action for legal malpractice arises under Ohio state law. Therefore, we must determine whether patent law is a "necessary element" of a claim presented in her complaint. Id. at 809. To establish a cause of action for legal malpractice based on negligent representation in Ohio, a plaintiff must show: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall, 674 N.E.2d 1164, 1169 (Ohio 1997). Ms. Davis's complaint alleges that she had an attorney-client relationship with Defendants and that Defendants breached their duty to her by failing to timely file the PCT applications and by "other omissions." Ms. Davis testified at deposition that these "other omissions" related largely to Mr. Thomson's alleged negligence in preparing and filing the U.S. applications.

Defendants argue that the resolution of Ms. Davis's allegations relating to the U.S. patent applications will necessarily involve substantive issues of U.S. patent law and assert that § 1338(a) jurisdiction exists on this basis. Ms. Davis responds that her allegations relating to the U.S. applications comprise an alternative theory supporting a

single claim for legal malpractice. It is undisputed that Ms. Davis's allegations relating to the PCT applications do not raise any issue of U.S. patent law. Therefore, if Ms. Davis's complaint merely presents alternative theories, the district court did not have jurisdiction over this case. See Christianson, 486 U.S. at 810 ("a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories").

We agree with Defendants that Ms. Davis's complaint presents multiple claims for legal malpractice. A "claim" is broadly defined as the "aggregate of operative facts giving rise to a right enforceable by a court." Black's Law Dictionary 264 (8th ed. 2004). Ms. Davis's allegations of attorney malpractice arise out of different sets of operative facts. On the one hand, she alleges that Mr. Thomson committed malpractice simply by failing to file the PCT applications on or before January 22, 2009. Additionally, however, she alleges that Mr. Thomson committed malpractice by performing various acts of negligence in connection with the preparation and filing of the U.S. applications—for example, she asserts that Mr. Thomson drafted inadequate claims; failed to include information sufficient to comply with the requirements of 35 U.S.C. § 112, ¶ 1; and failed to apply any of his own legal expertise to synthesize the descriptive materials she provided into a cohesive specification. Therefore, Ms. Davis's complaint presents at least two distinct claims: one relating to Mr. Thomson's preparation and filing of the U.S. applications and one relating to his failure to timely file the PCT applications.

Defendants argue that patent law is a necessary element of Ms. Davis's malpractice claim relating to the U.S. applications. Specifically, Defendants assert—

and the district court agreed—that Ms. Davis's claim should be subject to Ohio's "case-within-a-case" doctrine. This doctrine applies in certain malpractice cases to require the plaintiff to prove that she would have been successful in the underlying matter but for the alleged malpractice. See Vahila, 674 N.E.2d at 1168-69. If the case-within-a-case doctrine applies to Ms. Davis's claim, she can prevail only by proving that U.S. patents would have issued on her applications but for Defendants' malpractice—i.e., that her inventions were patentable under U.S. law.

Ms. Davis relies on the Ohio Supreme Court's decision in Vahila to argue that her claim is not subject to the case-within-a-case doctrine. In Vahila, the Ohio Supreme Court rejected the argument that the causation element of the legal malpractice standard should be replaced by a categorical application of the case-within-a-case doctrine. Id. at 1168-69. The court recognized that the burden this doctrine imposes on malpractice plaintiffs is substantial and often unjust, particularly where the plaintiffs, like the appellants in Vahila, "arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s) in question." Id. at 1169. Thus, the court stated that it could not endorse "a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter." Id. at 1170. The court emphasized, however, that the case-within-a-case doctrine remained viable: "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim." Id. at 1170-71.

The court confirmed the continuing applicability of the case-within-a-case doctrine in Environmental Network Corp. v. Goodman Weiss Miller, L.L.P., 893 N.E.2d 173 (Ohio 2008), holding that the doctrine applies to legal malpractice cases in which the plaintiff's recovery depends upon its success in the underlying action. Id. at 175. In Environmental Network, the appellees alleged that their attorneys had coerced them into settling the case. As their sole claim for recovery, the appellees argued that they would have obtained a better result if the case had been tried to conclusion. Id. at 177. The court observed that "unlike the plaintiffs in *Vahila*, who sustained losses regardless of whether their underlying case was meritorious," the appellees could prove causation and damages only if they established that "they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement." Id. Therefore, "the theory of [the] malpractice case place[d] the merits of the underlying litigation directly at issue," and the case-within-a-case doctrine applied; appellees "had the burden of proving by a preponderance of the evidence that but for appellant's conduct, they would have received a more favorable outcome in the underlying matter." Id. at 177-78.

Ms. Davis's malpractice claim relating to the U.S. applications is analogous to the claim at issue in Environmental Network. Ms. Davis alleges that Mr. Thomson breached his duty to her by negligently preparing and filing the U.S. applications. She further alleges that Mr. Thomson's negligence ultimately cost her the opportunity to secure patents on her inventions and that her investors withdrew their financial commitments as a result of her failure to secure patent protection. Unless Ms. Davis would have received patents on her inventions if the applications had been competently drafted—

i.e., unless her inventions were patentable—Mr. Thomson's negligence could not have caused her to suffer any damages. As in Environmental Network, therefore, Ms. Davis's theory of recovery "places the merits of the underlying [patent prosecution] directly at issue." Id. The district court correctly determined that the case-within-a-case doctrine applies to Ms. Davis's legal malpractice claim.

Because the case-within-a-case doctrine applies, Ms. Davis must prove, by a preponderance of the evidence, that she would have obtained patents on her inventions but for Mr. Thomson's alleged negligence. Id. at 177-78. The patentability of Ms. Davis's inventions is controlled by U.S. patent law. Therefore, patent law is a necessary element of one of the legal malpractice claims presented in Ms. Davis's complaint, and the district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1338(a).

B.

Before we reach the merits, we must address Ms. Davis's evidentiary contentions. We review evidentiary rulings that are not unique to our jurisdiction under the law of the regional circuit. Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1308 (Fed. Cir. 2001). The Sixth Circuit reviews a district court's evidentiary rulings for abuse of discretion. See Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C., 388 F.3d 976, 980 (6th Cir. 2004).

Ms. Davis argues that the district court abused its discretion in striking paragraph 5 of the affidavit of her patent law expert, Mr. O'Shaughnessy, which she filed in support of her motion for partial summary judgment. In paragraph 5, Mr. O'Shaughnessy opined that "an assessment of the patentability of an invention can be and routinely is performed without knowing what claims will eventually be made . . . [or] issue in a patent on that invention." J.A. 955. Mr. O'Shaughnessy also stated that he had

performed "such a patentability analysis" and that he concluded Ms. Davis's inventions were patentable based on this analysis.  Id.

The district court agreed with Defendants that Mr. O'Shaughnessy's opinion regarding the nature of a "patentability assessment" had not appeared in his earlier-filed expert report.  The court also agreed that the assertions of paragraph 5 conflicted with Mr. O'Shaughnessy's statements at deposition, where he testified that "patentability" referred to the question of whether claims were patentable over prior art and that he had never performed any patentability analysis.  Further, the court observed that the opinions and assertions of paragraph 5 were clearly relevant to Defendants' case: Defendants had attacked Mr. O'Shaughnessy's expert report primarily on the basis that he did not perform an adequate patentability assessment and had already deposed Mr. O'Shaughnessy on that point.  Under the circumstances, the court determined that it would be unjust to consider these newly raised opinions and assertions, and struck paragraph 5 for that reason.  In view of Mr. O'Shaughnessy's inconsistent deposition testimony and his failure to include the patentability opinion of paragraph 5 in his expert report, the court did not abuse its discretion in striking paragraph 5.

C.

The district court granted summary judgment in favor of Defendants.  We review a grant of summary judgment de novo, reapplying the same standard as the district court.  Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1379 (Fed. Cir. 2009).  "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1286 (Fed. Cir. 2007) (internal citation omitted).  "Summary judgment must be granted against a party who has not introduced

evidence sufficient to establish the existence of an essential element of that party's case, on which the party would bear the burden of proof at trial." Univ. of W. Va., Bd. of Trs. v. Van Voorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002).

To prevail on a claim for legal malpractice based on negligent representation, the plaintiff must establish that the attorney owed a duty to the plaintiff; that the attorney breached that duty and failed to conform to the standard required by law; and that "there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila, 674 N.E.2d at 1169. As discussed above, the case-within-a-case doctrine applies to Ms. Davis's malpractice claim relating to the U.S. applications. For similar reasons, the case-within-a-case doctrine applies to her malpractice claim relating to the PCT applications. Therefore, to satisfy the causation prong of the malpractice standard Ms. Davis must prove, by a preponderance of the evidence, that she would have received patents on her inventions but for Mr. Thomson's alleged negligence in preparing and filing the applications. Environmental Network, 893 N.E.2d at 178 (noting "the established rule that a plaintiff must establish by a preponderance of the evidence that defendant's actions were the proximate cause of plaintiff's losses").

Ms. Davis's patent law expert, Mr. O'Shaughnessy, devoted the majority of his report to explaining the ways in which the applications Mr. Thomson prepared and filed, as well as his legal advice, were deficient. We agree with the district court that Mr. O'Shaughnessy's report provides sufficient evidence to establish a genuine issue of material fact as to whether Mr. Thomson breached a duty he owed to Ms. Davis as her attorney. Mr. Thomson went on vacation, missed filing dates, and, by his own admission, filed an application which he realized contained a poorly drafted specification

and claims which he intended to repair at a later time. This is certainly not standard or adequate patent attorney representation, especially if, as Ms. Davis alleges, he did not inform her of his intention to proceed this way.

However, even if Ms. Davis can establish that Mr. Thomson breached a duty to her, she must still also prove causation, i.e., that absent his breach she would have obtained a patent. With respect to patentability—the critical issue for causation—Mr. O'Shaughnessy opined only that "but for the legal malpractice of Brouse McDowell identified throughout this report, Ms. Davis would have been awarded [U.S.] patents on her inventions" and that he had seen nothing in Brouse McDowell's files or in the depositions taken in the case that "would have blocked her ability to have secured commercially meaningful patents on her inventions." J.A. at 1207. Mr. O'Shaughnessy's report did not even address the patentability of Ms. Davis's inventions under foreign patent law. The district court observed that Mr. O'Shaughnessy had not performed a prior art search or a "patentability analysis," nor had he identified particular claims that could be made for Ms. Davis's inventions. Therefore, the court found that Mr. O'Shaughnessy's patentability opinion lacked adequate foundation and could not be relied upon by Ms. Davis as evidence of patentability.

We agree with the district court's conclusion. "We look to regional circuit law for the applicable standard controlling the factual foundation necessary to support an expert's opinion, which is not a matter peculiar to patent law." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1051 (Fed. Cir. 2001). In the Sixth Circuit, "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." Alexander v. CareSource, 576 F.3d

551, 560 (6th Cir. 2009). Mr. O'Shaughnessy's opinion that Ms. Davis's inventions are patentable is precisely this type of conclusory statement. His expert report contains no affirmative analysis supporting his opinion on patentability; instead, the opinion is followed only by the equally conclusory assertion that Mr. O'Shaughnessy has seen nothing to "block" this patentability. An unsupported opinion such as this cannot and does not create a genuine issue of material fact as to the patentability of Ms. Davis's inventions.

To be clear, however, we reject the suggestion that Ms. Davis would have had to identify claims for her inventions or perform a patentability analysis similar to that required in an invalidity trial. Ms. Davis's ultimate burden in this case is to establish the likelihood that her inventions would have been held patentable on examination in the PTO or any applicable national patent office, in accordance with the criteria of patentability applied during examination. At the summary judgment stage, she had only to introduce evidence sufficient to establish an issue of material fact as to patentability. Ms. Davis could have satisfied this initial burden in any number of ways. For example, in this case the PTO had issued rejections with respect to two of Ms. Davis's three U.S. applications prior to the date of Mr. O'Shaughnessy's expert report. Mr. O'Shaughnessy could have reviewed the prior art references cited in the office actions and discussed their effect on patentability. The case law is clear, however, that an expert's naked conclusion is insufficient to survive summary judgment. Id. at 560. Because that is the only evidence of patentability that Ms. Davis proffered with respect to her U.S. applications—and because she proffered no evidence at all with respect to

her PCT applications—we agree with the district court that she failed to establish a genuine issue of material fact as to the patentability of her inventions.

Because Ms. Davis failed to establish a genuine issue of material fact as to the patentability of her inventions, she cannot prevail on the causation element of her malpractice claim as a matter of law. Therefore, the district court properly granted Defendants' motion for summary judgment and entered judgment in their favor. We need not reach the district court's alternative conclusion that Ms. Davis failed to introduce evidence sufficient to raise an issue of material fact as to damages.

## III. CONCLUSION

We conclude that the district court properly exercised jurisdiction over Ms. Davis's malpractice cause of action. We also conclude that the district court did not abuse its discretion in striking portions of the supplemental affidavit of Ms. Davis's patent law expert. Finally, we conclude that Ms. Davis failed to introduce evidence sufficient to establish a genuine issue of material fact as to the patentability of her inventions and that the district court properly granted summary judgment in favor of Defendants. For these reasons, the judgment of the district court is

### AFFIRMED.

### COSTS

No costs.