# United States Court of Appeals
# for the Federal Circuit

———————————

**HERMAN MINKIN AND
H&M AERONAUT TOOL CO., INC.,**
*Plaintiffs-Appellants,*

**v.**

**GIBBONS, P.C.,**
*Defendant-Appellee.*

———————————

2011-1178

———————————

Appeal from the United States District Court for the District of New Jersey in case No. 08-CV-2451, Judge William J. Martini.

———————————

Decided: May 4, 2012

———————————

PATRICK T. COLLINS, Franzblau Dratch, of Livingston, New Jersey, argued for plaintiffs-appellants.

STEPHEN R. LONG, Drinker Biddle & Reath, LLP, of Florham Park, New Jersey, argued for defendant-appellee. With him on the brief was STACEY A. HYMAN.

———————————

Before RADER, *Chief Judge*, O'MALLEY and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.
*Circuit Judge* O'MALLEY concurs in the result.

REYNA, *Circuit Judge*.

Mr. Herman Minkin and H&M Aeronaut Tool Company, Inc. ("H&M") (collectively "Minkin"), allege that the law firm of Gibbons, P.C. ("Gibbons") committed legal malpractice in prosecuting the patent application for a hand tool called "extended reach pliers" ("ERP"). In early 2000, U.S. Patent No. 6,012,363 ("the '363 patent") issued to Mr. Minkin, the sole inventor, based on an application written and prosecuted by Gibbons. The Danaher Tool Company ("Danaher"), a Minkin customer, subsequently developed its own version of the ERP based on a simple design around and began competing against the Minkin device. Minkin sued Gibbons, alleging that the '363 patent was so negligently drafted that it offered no meaningful protection against infringers. In the malpractice litigation, Minkin's expert proposed alternate claim language that allegedly could have been patented and enforced against Danaher. The district court granted summary judgment in favor of Gibbons, finding that Minkin failed to raise a genuine dispute of material fact regarding causation, a necessary element in New Jersey legal malpractice cases. *Minkin v. Gibbons P.C.*, No. 2:08-02451, 2010 U.S. Dist. LEXIS 135847, at *1, *21 (D.N.J. Dec. 23, 2010). Because Minkin did not raise a genuine dispute of material fact as to the patentability of its alternate claims, we agree that the causation element was not shown as a matter of law and we *affirm*.

## I. Background

Mr. Minkin worked as an airplane mechanic, serving in the United States Navy and as an employee of several airlines. In the 1960s, he devised a tool that could reach deep inside airplane engines without disassembling

external components. The ERP was designed with two
pivots instead of one such that the jaws could grip in very
narrow areas. Mr. Minkin drew a sketch of his ERP,
reproduced below:



In 1996, Mr. Minkin sought to patent his invention
and retained the Gibbons law firm.[1] Mr. Minkin gave the
prosecuting attorneys access to his sketches, a working
prototype, and a prior art search conducted years earlier
by an independent firm. The search revealed at least
eleven relevant prior art patents, many teaching multi-
pivoted gripping tools dating back to the nineteenth
century. As a cost-saving measure, Mr. Minkin requested
that Gibbons not supplement the prior art search.

Gibbons prepared and filed application No. 08/660,119
("the '119 application") with the United States Patent and
Trademark Office ("PTO") on June 7, 1996. The '119
application included three independent claims (claims 1,
10, and 14) and several dependent claims. Originally filed
claim 1 was directed to a tool having two handles joined
by a first pivot, and two jaw elements joined by a second
pivot. The claimed length of the long end of the handle
was twice as long as the short end, and the claimed length
of the working end of the jaw was at least twice as long as
the tail end of the jaw.

---

[1] During the period at issue, Gibbons was
known as Crummy, Del Deo, Dolan, Griffinger & Vec-
chione, P.C.

The examiner rejected all claims in an office action dated October 22, 1996, citing, *inter alia*, anticipation and obviousness under 35 U.S.C. §§ 102 and 103.  The examiner relied primarily on a 1903 reference she uncovered, U.S. Patent No. 727,279 ("Brindos '279"), disclosing tie-handling tongs.  Brindos '279 was cited by the examiner for both the § 102(b) and § 103(a) rejections: original claims 1 and 4 were rejected as anticipated by Brindos '279; the balance of the claims were rejected as obvious over Brindos '279 alone or in combination with teachings of other prior art references.

Gibbons responded to the office action with an amendment dated December 19, 1996 ("the Amendment").  The Amendment added the following language to the end of claim 1: "wherein the distance between the second end and said first pivot on each handle element is at least three times longer than the distance between said tail end and said second pivot on each jaw element."  Joint Appendix ("J.A.") 851.  Plainly stated, the Amendment required a minimum 3:1 ratio between the lengths of the components connecting the two pivots of the ERP.  The Amendment, Minkin argued, provided for an increased mechanical advantage previously unavailable.  *Minkin*, 2010 U.S. Dist. LEXIS 135847, at *4.

The examiner issued another office action dated April 1, 1997.  While the Amendment successfully overcame the anticipation rejection, Brindos '279 was again cited by the examiner as the basis for a continuing obviousness rejection, now including amended claim 1.  The examiner stated that even though Brindos '279 did not disclose the relative lengths of the handles as claimed in the '119 application, it would have been obvious to one of ordinary skill in the art at the time the ERP was made to have placed the pivot points in the claimed locations.  Brindos '279 was also cited in view of other prior art, including

U.S. Patent Nos. 2,743,726 ("Grieshaber"), 3,384,411 ("Zlotnicki"), and 3,092,152 ("Neff") to reject as obvious the remainder of Minkin's claims.

On August 1, 1997, Gibbons filed a continuation-in-part, serial no. 08/904,524 ("the CIP application"), and abandoned the '119 application. The CIP application carried forward claim 1 as modified in the Amendment, added drawings, and included a 35 U.S.C. § 132 declaration directed to the examiner's earlier obviousness rejections.

The examiner conducted an interview on July 14, 1999. During the interview, the examiner handled a working ERP prototype and, as Minkin tells it, indicated that one day every mechanic would have an ERP in their toolbox and that a patent would issue on Minkin's CIP application. Following the interview, the examiner noted on the record that she had changed her opinion as to patentability, but provided no reasons. The '363 patent issued on January 11, 2000, with the 3:1 pivot ratio limitation at the end of independent claim 1.[2] Figure 2 of the '363 patent, is reproduced below:

---

[2] Claim 1 of the '363 patent reads in its entirety:

> 1. A tool, comprising:
>
> two handle elements, wherein each handle element has a first end and a second end;
>
> a first pivot joining each handle element together between said first end and said second end, wherein the distance between said first end and said first pivot is more than twice as long as the distance between said second end and said first pivot;

two jaw elements, wherein each jaw element has a working head end and an opposite tail end and wherein the tail end of said two jaw elements is pivotably connected to the second end of said two handle elements, respectively;

a second pivot joining each jaw element together between said working head end and said tail end, wherein the distance between said working head end and said second pivot is at least twice as long as the distance between said tail end and said second pivot; and

wherein the distance between the second end and said first pivot on each handle element is at least approximately three times longer than the distance between said tail end and said second pivot on each jaw element.

Col.7, ll.27-49.

U.S. Patent          Jan. 11, 2000       Sheet 2 of 7          6,012,363



Fig. 2

Mr. Minkin, through his new-formed company, H&M, began manufacturing and marketing the patented ERP. By 2004, major tool companies, including Danaher (a supplier for downstream retailers such as Sears and NAPA), were significant customers. *Minkin*, 2010 U.S. Dist. LEXIS 135847, at *5-6. In mid-2007, however, Minkin learned that Danaher had successfully designed around the constraints of the '363 patent to make and sell its own version of the ERP. Minkin, recognizing that the Danaher tool was non-infringing as it avoided the 3:1 ratio for the pivots, sued Gibbons for patent prosecution malpractice in state court.

The case was removed to the United States District Court for the District of New Jersey. *Id.* at *7. Minkin

alleged that Gibbons committed malpractice by negligently drafting the claims in the '363 patent so narrowly as to offer virtually no protection against competitors, resulting in lost-sale damages. *Id.* at *6. The district court applied state law and this court's guidance that an essential element of Minkin's causation proof would be to show that hypothetical alternate claims would have been patentable. *Id.* at *12-13 (citing *Davis v. Brouse McDowell, L.P.A.,* 596 F.3d 1355, 1360-61 (Fed. Cir. 2010)). The parties agreed that for such a patentability determination in New Jersey, the trial court should perform a "suit-within-a-suit" or "case-within-a-case" analysis. *See Minkin*, 2010 U.S. Dist. LEXIS 135847, at *12-13.

To prove the patentability of alternate claims with additional breadth, Minkin offered the expert testimony of Richard Gearhart ("Gearhart"), a patent attorney. Minkin introduced two expert reports prepared by Gearhart. The initial expert report offered two alternate claims for the Minkin ERP, which Gearhart asserted could have been patented:

> 1. An article of manufacture, comprising:
>
> two handles, each handle having a holding end, a handle intermediate point, and a connecting end, the handles being pivotably connected at the handle intermediate point;
>
> two jaw pieces, each jaw piece having a gripping end, a jaw intermediate point, and a second connecting end, the handles being pivotably connected at the jaw intermediate point;

wherein each connecting end is pivotably connected to a second connecting end; and

the distance between the handle intermediate point and the connecting end is greater than the distance between the second connecting end and the jaw intermediate point.

or

1. A device comprising;

a first pair of parallel arms having a first connecting end and a handle end, said first parallel arms able to swing about a first offset hinge, said first offset hinge located between said first connecting end and said handle end;

a second pair of parallel arms having a straight clasping end and a second connecting end, said second set of parallel arms able to swing about a second offset hinge, said second offset hinge located between said straight clasping end and said second connecting end;

each said second connecting end being capable of forming an offset hinge by attaching to each said first connecting end; and

a motion of said first pair of parallel arms about said first offset hinge being capable of causing a mutual motion of said second pair of parallel arms about said second offset hinge.

J.A. 164. Both of Gearhart's alternate claims notably eliminated the 3:1 ratio limitation added by Gibbons through the Amendment. The initial Gearhart expert report mentioned no prior art except for Brindos '279, and indicated nothing about the impact of the prior art on the patentability of the alternate claims other than to state that they "would have avoided the cited prior art." *Id.*; *Minkin*, 2010 U.S. Dist. LEXIS 135847, at *16.

On December 6, 2009, a 37-page supplemental Gearhart expert report was served. The supplemental report compares the alternate claims to prior art in the context of anticipation, but there was no discussion of nonobviousness. *Id.* at *16-17, *20-21. In deposition, Gearhart testified that his analysis of the prior art in the expert reports was limited to patentability under 35 U.S.C. § 102 and that he had not, for various reasons, addressed whether his alternate claims would have been allowed under 35 U.S.C. § 103. *Id.*

Gibbons moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. In granting the summary judgment motion, the district court found that

> Gearhart utterly fails to provide any sort of analysis with respect to the alleged non-obviousness of his claims and gives no opinions or explanation showing why his claims would not be deemed obvious. He makes no attempts to set forth the content of the prior art, to describe how the sample claims differ from the prior art, nor even to identify the level of ordinary skill in the field. Indeed, he makes nothing more than a bald assertion that his samples "would have avoided the prior art" without explaining what he means by this,

> how he arrived at such a conclusion, or
> how it relates to obviousness. As such,
> this statement is merely an inadmissible
> net opinion that fails to shed any light on
> the question of obviousness.

*Minkin*, 2010 U.S. Dist. LEXIS 135847, at *16. The district court also noted concessions by Gearhart himself, including that he "had no particular opinions on the topic of nonobviousness," and that a nonobviousness analysis "would have taken too long, and would have been too difficult for his colleagues to read." *Id.* at *17. "Indeed," found the court, "Gearhart admits that it would be 'very speculative' to say the PTO would have issued his sample claims." *Id.* at *16.

The district court concluded that Minkin's expert did not "provide any sort of evidence demonstrating that his sample alternative claims are non-obvious. As such, he has failed to provide the necessary proof that a patentable alternative to the '363 patent exists." *Id.* at *21. Accordingly, the district court held that Minkin did not carry its causation burden, an essential element of a New Jersey malpractice claim, and entered judgment as a matter of law. *Id.* Minkin timely appealed.

## II. Discussion

### A. Jurisdiction

Analyzing jurisdiction, the district court found "that a substantial question of federal law exists and that resolution of this question by the federal courts will not disrupt the balance of power between state and federal government." *Id.* at *10. Neither party contends that jurisdiction is lacking. Notwithstanding, we have an obligation to satisfy ourselves that there is jurisdiction on appeal. *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111

U.S. 379, 382 (1884); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1284 (Fed. Cir. 2007).

State law patent attorney malpractice cases inherently pose complex jurisdictional issues.[3] They require our careful consideration, for example, to ensure the existence of a substantial question of federal patent law. Nevertheless, this court's binding precedent recognizes our jurisdiction in patent attorney malpractice cases such as this one, in which the plaintiff is required to establish that, but for attorney negligence, he would have obtained valid claims of sufficient scope that competitors could not easily avoid. *See id.*; *see also Air Measurement Techs, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1266 (Fed. Cir. 2007). In *Immunocept*, for example, this court held that jurisdiction is proper where allegedly negligent patent drafting allowed competitors to avoid narrow claim scope by a simple work around. 504 F.3d at 1284-85. And in *Davis*, this court held that jurisdiction is proper if in order to succeed the plaintiff must establish that it would have received a patent but for attorney negligence during prosecution. 596 F.3d at 1361; *see also Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367, 1371-72 (Fed. Cir. 2011). We conclude that our exercise of jurisdiction in this case is proper under 28 U.S.C. § 1338(a).

### B.  "Suit-Within-a-Suit" Analysis

The crux of Minkin's allegations is that Gibbons negligently drafted patent claims overly narrow in scope,

---

[3]    *See* Concurring Opinion at 1-2 (O'Malley, J., concurring); *see also Byrne v. Wood, Herron & Evans, LLP*, No. 2011-1012, --- F.3d ---, 2012 U.S. App. LEXIS 6021 (Fed. Cir. Mar. 22, 2012) (O'Malley, J., dissenting from denial of petition for rehearing en banc), and *USPPS, Ltd. v. Avery Dennison Corp.*, No. 2011-1525, ---F.3d---, (Fed. Cir. Apr. 17, 2012) (O'Malley, J., concurring).

constituting legal malpractice. Because state law creates Minkin's cause of action for legal malpractice, this court must apply the law of New Jersey to decide whether Gibbons is liable. *See, e.g., Warrior Sports*, 631 F.3d at 1371-72 (applying Michigan law); *Davis*, 596 F.3d at 1359-60 (Ohio law); *Air Measurement*, 504 F.3d at 1268-69 (Texas law). To establish legal malpractice in New Jersey, a variation on the tort of negligence, a plaintiff must demonstrate in its case-in-chief: (1) the existence of an attorney-client relationship imposing a duty of care upon the attorney; (2) breach of that duty, defined as deviation from the standard of care; (3) proximate causation; and (4) damages. *See Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.,* 179 N.J. 343, 357 (2004); *Conklin v. Hannock Weisman*, 145 N.J. 395, 416 (1996). This case hinges on the third prong, that is, whether Gibbons's actions proximately caused the loss to Minkin.

New Jersey law provides several ways of establishing proximate causation in malpractice cases, including a "suit-within-a-suit." *Garcia*, 179 N.J. at 358. The suit-within-a-suit approach applies where recovery depends on success in the underlying matter and "aims to clarify what would have taken place but for the attorney's malpractice." *Id.*; *see also Conklin*, 145 N.J. at 417 ("Cause in fact is sometimes referred to as 'but for' causation. . . . The simplest understanding of cause in fact in attorney malpractice cases arises from the case-within-a-case concept."). New Jersey trial courts commonly employ this approach where the parties agree to that process. *Garcia*, 179 N.J. at 358-61.

There can be no causation demonstrated under the suit-within-a-suit rubric for patent prosecution malpractice where any claim drawn to the alleged invention would have lacked patentability *ab initio*. *Davis*, 596 F.3d at 1363-64. Thus, a required element of the causa-

tion proof is for the plaintiff to demonstrate that the invention would have been patentable. *See id.* at 1360-64. Malpractice suits in a patent prosecution context most frequently arise where attorney negligence results in a final PTO rejection. Here, Minkin complains not that a patent did not issue, but that the allowed claims were drafted too narrowly to protect the ERP against competitors, namely Danaher. Because the parties agree that the "suit-within-a-suit" analysis applies, Minkin must prove by preponderant evidence that alternate claim language would have been deemed patentable by the PTO and that it would have read on the Danaher tool. *Cf. id.* (requiring plaintiff to prove by a preponderance of evidence that the PTO would have issued a patent on the invention but for attorney negligence in preparing and filing the application); *Warrior Sports*, 631 F.3d at 1372 (requiring plaintiff to prove proximate causation by showing that it would have prevailed in an infringement suit against the competitor); *Garcia*, 179 N.J. at 357-58 (requiring plaintiff in a suit-within-a-suit format to prove by a preponderance of evidence that he would have recovered a judgment in an action against the main defendant); *see also Byrne v. Wood, Herron & Evans, LLP*, 450 F. App'x 956, 962 (Fed. Cir. Nov. 18, 2011) ("In the context of a malpractice suit in which a plaintiff alleges that, but for the attorney's negligence, he would have obtained broader patent claims, a plaintiff must show that broader patent claims 'would have been held patentable on examination in the [PTO] . . ., in accordance with the criteria of patentability applied during examination.'") (quoting *Davis*, 596 F.3d at 1364).

1. The Patentability of Minkin's Alternate Claims

In granting summary judgment, the district court held that Minkin failed to raise a genuine dispute of material fact regarding patentability. Specifically,

Minkin provided no evidence showing that Gearhart's alternative claim language would have overcome an obviousness rejection at the PTO. *See Minkin*, 2010 U.S. Dist. LEXIS 135847 at *17 ("In short, Gearhart has entirely failed to provide any evidence demonstrating that his sample claims are not obvious.").

This court reviews a district court's grant of summary judgment under the law of the regional circuit. *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). The Third Circuit "review[s] an order granting summary judgment de novo, applying the same standard used by the District Court." *Azur v. Chase Bank, USA*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc)). Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56, the burden of showing that no genuine dispute of material fact exists rests initially on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. *Azur*, 601 F.3d at 216. Where a nonmoving party fails to make a showing sufficient to establish an element essential of that party's case, and on which that party will bear the burden of proof at trial, summary judgment is required under the plain language of Rule 56. *See Celotex Corp.,* 477 U.S. at 322-23.

On appeal, Minkin argues that (a) it did not have the burden of showing the nonobviousness of the alternate claims at the summary judgment stage of the proceeding,

(b) even if it did have the burden at the summary judgment stage, the nonobviousness of the alternate claims was shown in the 37-page Gearhart supplemental report, and (c) the trial court should have inferred the nonobviousness of Gearhart's alternative claim language because the '363 patent issued after an in-person interview. None of these arguments has merit.

a. Minkin Had the Burden of Showing Nonobviousness

Minkin contends, based on this court's opinion in *Davis*, 596 F.3d at 1363-64, that it did not have the burden on summary judgment of establishing that its alternative claims were nonobvious, beyond simply distinguishing prior art. In *Davis*, summary judgment was granted in favor of the defendant because the aggrieved applicant's expert had provided only naked conclusions regarding the patentability of the invention. *Id.* This court affirmed the result, but added:

> [W]e reject the suggestion that Ms. Davis would have had to identify claims for her inventions or perform a patentability analysis similar to that required in an invalidity trial. Ms. Davis's ultimate burden in this case is to establish the likelihood that her inventions would have been held patentable on examination in the PTO . . . . At the summary judgment stage, she had only to introduce evidence sufficient to establish an issue of material fact as to patentability. Ms. Davis could have satisfied this initial burden in any number of ways. . . . Mr. O'Shaughnessy [plaintiff's expert] could have reviewed the prior art references cited in the office ac-

tions and discussed their effect on patentability.

*Id.* at 1364. Minkin argues that this language in *Davis* announced a more deferential standard in malpractice cases than is required in ordinary infringement suits, and that the district court erred in requiring any discussion of nonobviousness at the summary judgment stage.

Minkin misreads *Davis*. The statement above does not establish a more deferential standard for malpractice cases specifically; rather, it is a routine observation about evidentiary showings required under Rule 56 generally. *Compare id. with Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . ."). Thus, while a full "patentability analysis similar to that required in an invalidity trial" is not necessary, *Davis*, 596 F.3d at 1364, summary judgment is nonetheless "'proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact,'" *Azur*, 601 F3d at 216 (quoting *Nicini*, 212 F.3d at 805). We find that under the regular evidentiary burdens of Rule 56, Minkin had "to introduce evidence sufficient to establish an issue of material fact as to patentability." *Davis*, 596 F.3d at 1364.

Patentability necessarily includes the condition that an invention consist of nonobvious subject matter. 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1, 14 (1966). Minkin's ERP claims, unlike *Davis*, had already drawn numerous obviousness rejections from across a very crowded art field. *See Minkin*, 2010 U.S. Dist.

LEXIS 135847, at *18. In its motion for summary judgment, Gibbons identified § 103(a) issues with respect to the alternate claims, submitting expert opinion questioning Minkin's ability to obtain even broader scope in light of the record. Because it was Minkin's ultimate burden at trial to establish nonobviousness, it bore the burden on summary judgment of demonstrating a disputed material fact regarding this essential element of its case, especially given that Gibbons put § 103(a) directly at issue. *Univ. of W. Va., Bd. of Trs. v. Van Voorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002) ("Summary judgment must be granted against a party who has not introduced evidence sufficient to establish the existence of an essential element of that party's case, on which the party would bear the burden of proof at trial.").

Minkin defends that it would have been too cumbersome in the first instance to "prove a negative" by addressing every potential combination of prior art that could be used in an obviousness rejection.[4] Minkin suggests that merely distinguishing each prior art reference individually was sufficient to defeat summary judgment, reflecting actual practice before the PTO where applicants often await an examiner's specific § 103(a) rejections before discussing nonobviousness.

We recognize that applicants do not typically prove "validity" against all prior art, and only show that claims are not invalid over references cited against them. But the order of typical prosecution practice is irrelevant to the procedural posture here. Malpractice cases under a suit-within-a-suit framework require as part of the plain-

---

[4] The district court did not require that Minkin prove the patentability of its alternative claims to the level of a "guarantee," Minkin Br. at 15-17, 26, 30, and never suggested that anything more than preponderant evidence would be necessary to prevail.

tiff's case-in-chief a demonstration of the likelihood of patentability. *See Davis*, 596 F. 3d at 1363-64. In the context of summary judgment, we hold that the district court was obligated to determine whether Minkin could satisfy its ultimate burden of showing patentability in light of Gibbons's motion. Rule 56 is designed to assess sooner rather than later the parties' proof in order to see whether there is a genuine need for trial. *See* Fed. R. Civ. P. 56, Notes of Advisory Committee of Rules, 1963 Amendment, Subdivision (e). Minkin's improper reliance on *dicta* from *Davis* to save it from summary dismissal is incompatible with a basic purpose of Rule 56. *Id.*; *see also Celotex Corp.,* 477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

Rule 56 requires a party opposing summary judgment to present specific facts demonstrating that there exists a genuine dispute of material fact to be resolved by a fact-finder. *Id.* at 324; *see also Azur*, 601 F3d at 216. If Minkin had factual disputes concerning nonobviousness it was obligated to raise them in response to the properly supported motion for summary judgment expressly relying on § 103(a). *See id.* at 323. Minkin, however, failed to raise a single material fact in dispute as to the nonobviousness of the proposed alternate claims.

b. The Supplemental Report Was Not Sufficient

Minkin argues that even if it did have the burden as to nonobviousness, it met that burden by thoroughly analyzing sixteen prior art references and their relationship to the alternate claims. While admitting that there is no express discussion of § 103(a) in any report, Minkin

argues that the district court ignored the nonobviousness implications of Gearhart's 37-page supplemental report.

The district court did consider and address Gearhart's 37-page supplemental expert report in detail. *See Minkin*, 2010 U.S. Dist. LEXIS 135847, at *20-21. It found that Minkin did not carry its burden with respect to patentability in the supplemental expert report, which did "not touch on obviousness whatsoever." *Id.* at *20. According to the district court, while Gearhart's supplemental expert report "does provide certain opinions on the patentability of his alternate claims," it was nonetheless "clear beyond all doubt that the opinions contained therein are strictly limited to novelty/anticipation concerns." *Id.* The district court concluded that "Gearhart has failed to provide any sort of evidence demonstrating that his sample alternative claims are non-obvious." *Id.* at *21.

We agree. Gearhart's supplemental expert report only states his view that the alternate claims would have overcome a § 102 challenge. We have held, however, that anticipation and obviousness are separate conditions of patentability, requiring different tests and different elements of proof. *Cohesive Techs, Inc. v. Waters Corp.,* 543 F.3d 1351, 1364 (Fed. Cir. 2008); *Duro-Last, Inc. v. Custom Seal Inc.,* 321 F.3d 1098, 1107-08 (Fed. Cir. 2003); *see generally KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406-07 (2007). Minkin's attempt to recast its anticipation analysis as sufficient for nonobviousness purposes is unavailing. Gearhart testified that his expert analysis of the prior art was limited to potential rejections under § 102; he further conceded that he did not undertake any analysis of § 103(a) and admitted that "it would be 'very speculative' to say that the PTO would have issued his sample claims." *Minkin*, 2010 U.S. Dist. LEXIS 135847, at *16-17 (internal citations omitted). Indeed, Gearhart's

expert reports failed even to discuss the nonobviousness of his sample claims over the prior art cited in § 103 rejections during the prosecution history of the '363 patent, including not only Brindos '279, but Greishaber, Zlotnicki, and Neff.

We find that the 37-page Gearhart report contains nothing to assist the trier of fact with respect to the unique tests and proofs of § 103(a), and provides no insight into the question of whether the alternate claims would ultimately have been allowed by the PTO. The movant may prevail under Rule 56 by exposing "the absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. The trial court did not err in finding that Minkin failed to provide evidence demonstrating that its alternate claims are nonobvious.[5]

c. No Inference of Patentability from the '363 Patent

Minkin argues that since that the examiner ultimately granted the '363 patent after an office interview, the court should infer from that favorable history that Gearhart's alternate claim language would also be deemed nonobvious. The district court refused to recognize that a "presumption of non-obviousness attaches" in

---

[5] Minkin was also required to demonstrate that its proposed alternative claim language would have read on the Danaher tool. *Minkin,* 2010 U.S. Dist. LEXIS 135847, at *13. The district court did not rely on this ground in dismissing the case, but noted that while Gearhart suggested that his sample claims would have protected Minkin against the Danaher tool, "he provides no opinions or rationale in support of this proposition." *Id.* at *16. It is well-established that unsupported expert opinions do not create a genuine issue of material fact. *Davis,* 596 F.3d at 1364; *see Novartis Corp. v. Ben Venue Labs, Inc.,* 271 F.3d 1043, 1051 (Fed. Cir. 2001) (applying Third Circuit law).

this context, calling this Minkin argument "weak," "unsupported," and "contrary to common sense." *Minkin*, 2010 U.S. Dist. LEXIS 135847, at *17-18. We agree.

The challenge for Gibbons all along, as noted by the district court, was drafting broadly in the face of such a crowded art field. *Id.* at *18. Including a 3:1 pivot ratio limitation was the final compromise to the claim language agreed on by the examiner and inventor in an effort to secure patentability. The language of the issued '363 patent, however, is entirely distinct from the alternate claim language drafted by Gearhart, who attempts to capture more scope for purposes of this litigation. An inference of nonobviousness does not attach to the alternate claims by virtue of the issued '363 patent because the claim terms are different. The fact that the ERP was ultimately deemed nonobvious after handling a prototype does not mean that an examiner would necessarily decide same thing if the claims were broader. We therefore refuse to conclude that an examiner would have allowed Gearhart's alternate claims of greater scope just because the more narrow '363 patent issued after an in-person interview.

## III.  Conclusion

Providing no evidence of nonobviousness, Minkin failed to establish a genuine dispute of material fact as to the patentability of its alternate claims. Because Minkin did not carry its burden on causation, the district court's summary judgment in favor of Gibbons is

### AFFIRMED.

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**HERMAN MINKIN AND
H&M AERONAUT TOOL CO., INC.,**
*Plaintiffs-Appellants,*

**v.**

**GIBBONS, P.C.,**
*Defendant-Appellee.*

---

2011-1178

---

Appeal from the United States District Court for the District of New Jersey in case No. 08-CV-2451, Judge William J. Martini.

---

Decided: May 4, 2012

---

Before RADER, *Chief Circuit Judge*, O'MALLEY, and REYNA, *Circuit Judges*.

O'MALLEY, *Circuit Judge*, concurring.


I concur in all aspects of the thoughtful majority opinion, save one. While I agree we are compelled to exercise jurisdiction over this matter, I do not agree it is "proper" that we do so. Majority Op. at 12. As the majority notes in section II A., there is binding precedent that compels

that we decide the merits of this case. I believe that precedent is incorrect, however, and inconsistent with controlling Supreme Court case law.

I explained why I believe this court should discontinue exercising jurisdiction over state law malpractice claims in *Byrne v. Wood, Herron & Evans, LLP*, No. 2011-1012, --- F.3d ---, 2012 U.S. App. LEXIS 6021 (Fed. Cir. Mar. 22, 2012) (O'Malley, J., dissenting from denial of petition for rehearing en banc), and *USPPS, Ltd. v. Avery Dennison Corp.*, No. 2011-1525, ---F.3d---, (Fed. Cir. April 17, 2012) (O'Malley, J., concurring). For those same reasons, I believe we should consider *en banc* the propriety of continuing to hear cases such as this one at our first opportunity.